IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CRIMINAL ACTION NO. |
| v. | ) | 2:18cr122-MHT |
| | ) | (WO) |
| TIMOTHY ANDRE ENGLISH | ) | |

## OPINION

Defendant Timothy Andre English pled guilty to one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). At his sentencing, the court granted his motion for a downward variance, but did not accept his proposed sentence of probation. Instead, English was sentenced to 18 months imprisonment followed by three years of supervised release. The court orally gave its reasons for the variance at the sentencing hearing; however, for the sake of clarity, this opinion outlines those reasons.

## I. FINDINGS OF FACT

English is 48 years old. He has four sons, ages 16 to 24, and two grandchildren. Prior to his arrest on

the instant offense, he resided on a multi-acre property in Kent, Alabama, with his two youngest sons, his eldest son and his son's wife, and his two infant granddaughters.

In 1999, English was convicted in Florida of fraud, a crime punishable by imprisonment for a term of more than one year. As stated in the Presentence Investigation Report, he has had no convictions or arrests since 1999, other than for the instant offense.

Because of his prior felony conviction, English was not legally permitted to own a firearm. Indeed, knowing this, he petitioned the State of Florida in 2012 for clemency to have his civil rights restored. However, because of a strong desire to go hunting with his sons, and an apparent embarrassment to admit to his sons that he was not legally allowed to possess a gun, English obtained several firearms before any action was taken on the clemency petition.

In August 2017, U.S. Postal Inspectors executed a search warrant of English's residence based on a

suspected Internet fraud scheme occurring there, and found ten firearms, assorted ammunition, six firearm magazines (including one 30-round magazine), and various gun cases. The firearms included one Bushmaster .223 caliber semiautomatic rifle, which was found either with a large capacity magazine attached or in close proximity. According to the plea agreement, as well as all of the evidence presented in this case, the firearms were not used or possessed in connection with another felony offense. English was interviewed after the search and candidly admitted to having purchased them or arranged for their purchase. An investigation was then initiated by the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). English was later arrested for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and in April 2018 pled guilty to that offense.

## II. LEGAL STANDARD

Under the Supreme Court's current framework, the Sentencing Guidelines are not mandatory. *See United States v. Booker*, 543 U.S. 220, 245 (2005). Instead, although district courts "still must consult the Guidelines and take them into account when sentencing defendants," *United States v. Todd*, 618 F. Supp. 2d 1349, 1352-53 (M.D. Ala. 2009) (Thompson, J.), they must also independently determine whether the sentence is reasonable under the sentencing factors listed in 18 U.S.C. § 3553(a):

> "(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> "(2) the need for the sentence imposed—
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

> "(3) the kinds of sentences available;
>
> "(4) the kinds of sentence and the sentencing range established for—
>
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the [sentencing] guidelines ...
>
> "(5) any pertinent policy statement [by the Sentencing Commission] ...
>
> "(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> "(7) the need to provide restitution to any victims of the offense."

While the Guidelines calculations are an attempt to approximate these diverse factors, a judge may, in the course of an individual sentencing, determine that "the case at hand falls outside the 'heartland' to which the Commission intends individual Guidelines to apply [or] the Guidelines sentence itself fails properly to reflect § 3553(a) considerations." *Rita v. United States*, 551 U.S. 338, 351 (2007).

## III. DISCUSSION

There are two main reasons for which the court concluded that the Guidelines provisions did not adequately calculate a reasonable sentence in this case, and that a downward variance was therefore warranted.

The first reason is that the primary if not sole reason that English possessed the firearms was for hunting with his sons, in the rural area of Alabama in which they resided. The government conceded that the firearms were not used in connection to another offense, and could not offer any evidence that the guns were used for any reason other than hunting. That is, there is no evidence that the guns were used in any manner that is violent or illicit, other than the fact that English could not possess them as a convicted felon. Moreover, according to the Presentence Investigation Report, English has not been convicted or even arrested within the past 19 years, and he has abided by all conditions of pretrial release. A

48-year-old man who has not been convicted in 19 years, who possesses guns--albeit several--to teach his children to hunt, appears well outside the heartland of the typical felon-in-possession case. For this reason, the court varied downward by two offense levels.

The second reason for a variance is that the six-level base offense enhancement for possession of a "semiautomatic firearm that is capable of accepting a large capacity magazine," *see* USSG § 2K2.1(a)(4)(B), does not apply with any gradation, and fails to reasonably capture the level of enhancement that should apply to English's possession of the Bushmaster semiautomatic rifle. This enhancement was a major reason why English, who had a criminal-history category of I, was facing a Guidelines sentencing range of multiple years for gun possession unrelated to another offense. Rather than the full six-level enhancement, however, the court determined that a two-level enhancement was reasonable in English's case.

The enhancement in § 2K2.1 for semiautomatic firearms was adopted at the direction of Congress pursuant to the Violent Crime Control and Law Enforcement Act of 1994. Among other provisions, that Act introduced a national "assault weapons ban," which covered firearms such as the semiautomatic rifle that English possessed. In response, the Sentencing Commission amended the enhancement in § 2K2.1(a)(4)(B)--which already applied to sawed-off shotguns, silencers, machine guns, bombs, grenades, rockets, and poison gas devices, *see* 26 U.S.C. § 5845(a) & (f)--to include the semiautomatic weapons banned by the Act.

Congress allowed the assault weapons ban to lapse on September 13, 2004. In addition, Congress commissioned a study conducted after the enactment of the ban, which made findings that appear to undermine the rationale for the ban. *See* Jeffrey A. Roth et al., Urban Institute, *Impact Evaluation of the Public Safety*

*and Recreational Firearms Use Protection Act of 1994*, at 2 (Mar. 1997).

Despite Congress's repeal of the ban, and the findings of its study in support of that repeal, the Sentencing Commission in 2006 decided to retain the § 2K2.1 enhancement for semiautomatic weapons, and in fact expanded its definition into its current form. The only reason given by the Commission for the 2006 Amendment was "inconsistent application" of the enhancement "in light of the ban's expiration." USSG, App. C, amend. 691 (Nov. 1, 2006). The Commission never addressed whether the enhancement for semiautomatic firearms should continue to apply or continue to apply to the same degree after Congress had repealed the Act under which it was initially adopted, or in light of the findings in the congressional study.

This history casts some doubt on whether, in light of the original reason for the semiautomatic weapons enhancement and Congress's subsequent actions, it continues to be reasonable for courts to apply a

9

**six-level enhancement to defendants for possessing such weapons, which are now legal for non-felons to possess.**

**Regardless, however, even if enhancement is warranted, it is clear that English's possession of the Bushmaster semiautomatic rifle falls outside of the 'heartland' of cases under § 2K2.1(a)(4)(B), and that the full six-level enhancement should therefore not apply. As previously stated, there is no evidence to indicate that English possessed or used the guns for any reason other than hunting with his sons, and no evidence that he has been involved in any other criminal activity, much less violent criminal activity, within the last 19 years. In addition, the Presentence Investigation Report indicates that none of his previous convictions involved gun violence. Simply put, the circumstances of English's possession of the semiautomatic Bushmaster rifle *for hunting* are not on par with the typical felon in possession of the other weapons listed in § 2K2.1(a)(4)(B), namely *silencers, bombs, poison gas, and the like*.**

Despite the concerns raised above regarding the Commission's retention of the semiautomatic weapons enhancement, the court adopted and applied that enhancement here, as the court could not conclude that no enhancement was warranted. However, the court concluded that English's conduct warranted only a two-level enhancement, rather than the full six levels. Because § 2K2.1(a)(4)(B) does not provide for any gradation in order to reflect the different nature of English's offense, the court varied downward to correct that.

After applying a variance based on the two grounds discussed, English's resulting offense level was 15, with a sentencing range of 18 to 24 months.

English requested a sentence of probation, which would have required a downward variance of some 10 offense levels. *See* USSG § 5B1.1(a) (describing Guidelines ranges eligible for a sentence of probation). As grounds for that request he relied primarily on his use of the firearms for hunting, his

lack of recent convictions, and his responsibility to provide for his two teenage sons and infant grandchildren. With regard to English's family responsibilities, the court granted his unopposed motion for staggered sentences, in the event that his wife is sentenced in this case, so that one of the parents may be released on supervision while the other is serving their sentence. In any case, while the circumstances here do warrant a downward variance as described, the court explained that a sentence of imprisonment is necessary--particularly given the fact, demonstrated by English's pending clemency application to the State of Florida, that he knew that his possession of the firearms was illegal. The court cannot 'wink' at such a knowing violation of the law, and imposing anything less than a sentence of imprisonment here would amount to such 'winking.' Accordingly, the court sentenced English to 18 months imprisonment.

***

For the above reasons, the court found that the sentence imposed of 18 months custody followed by three years of supervised release to be sufficient but not greater than necessary to comply with the purposes of § 3553(a).

DONE, this the 24th day of July, 2018.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE